May it please the court, Carolyn Alexander for appellant Brian Belleque, and I'd like to request two minutes for rebuttal, please. Just watch your time and try to stop while there's still two minutes left. I will, Your Honor. Thank you. The district court in this case erred in a number of ways. First of all, it granted relief on a procedurally defaulted claim. Second, it performed no deference analysis whatsoever and in fact didn't even mention the numerous state court findings of fact and decisions rejecting petitioner's claim. It misunderstood the controlling Supreme Court precedent and in fact only applied just Strickland rather than the more appropriate McMahon v. Richardson. And lastly, failed to understand the requirements of prejudice under Hill v. Lockhart. Alexander, could you give a 20-word or less description of the Oregon sentencing scheme? I mean, I take it that the maximum sentence that is referred to throughout is the maximum statutory sentence beyond which no sentence can go no matter how that sentence is arrived at. Yes, Your Honor. Is that correct? Yes, Your Honor. Okay. So, yeah. So if that's so, then what is it that distinguishes consecutive sentences from departures? Where do each fit into the scheme? Yes, Your Honor. I was ready for that question, although it's not an easy one. I have to admit. Okay, 25 words. 25 words. I don't think I could do that, but I will make a valiant effort. Oregon's sentencing law, especially at the time where counsel Mark Friedman rendered his advice, was extremely complicated and it was going through significant changes on the consecutive versus departure sentencing rules. And I think you see that in the trial court's description of what it was trying to do and how it was trying to structure the sentence. Under Oregon law, as informed by State v. Skelton, State v. Langdon, and State v. Davis, which the trial court talks about, at least Langdon and Skelton, is this. If a trial court... I'm not trying to ask. Let me just clarify here. I'm not trying to ask for an exegesis on the substantive Oregon law. All I'd like to know, like on the federal side, to me there is a world of difference between imposing a consecutive sentence or a concurrent sentence on the one hand and deciding to make an upward or downward departure from a calculated guideline range. On the other hand, is that more or less true in Oregon? I'm not asking whether the departure here was a good departure or a bad departure. I'm just trying to get where it fits. I see. I don't think there is that difference, Your Honor. And under State v. Davis, well, all of the cases in the red brief, Davis, Langdon, Skelton, Miller, and Buchholz together explain that. And I don't think there is that dramatic difference. Well, if there is no difference, then why do you have any argument at all that there was a failure to exhaust for having mentioned the one, that is consecutive sentences but not the other, which is departures? I see. I see, Your Honor. If you're talking about procedural default, they are certainly two different issues. I thought what you were asking me. Well, they either are or they aren't. I mean, I don't get how a consecutive sentence means the same thing as a departure. Does it? No. And that's not what I was saying, Your Honor. The trial court, very briefly, in Petitioner's case, is restricted to the 400 percent rule in imposing consecutive and departure sentences. In this case, because Petitioner's exposure was so good on ballot measure 11, mandatory minimum sentences, 375 months, the departures over and above that didn't make a lot of difference because of the 400 percent rule. However, they are definitely two different claims. And the cases cited in the blue brief, forgive me, I think I said red. I'm so used to that. Explain exactly what the difference is. Yes, they are two different sentencing components. But for purposes of the 200 and 400 percent rule, in this case, they are really not so different. So when Mark Freedman advised us. Well, if that's true, then if you have mentioned the one, why can't you infer that you've mentioned the other? Well, that's certainly what the district court did. Look, I'm asking you. I think that's wrong under Peterson v. Lampert, cited in the blue brief. And this is why. Because counsel filed, post-conviction counsel filed a petition and included all of the claims in that petition, which included consecutive sentences and a hearing in aggravation, those two separate claims. And apparently, counsel thought it was a different claim because it was alleged separately in the petition. Then on appeal, the claim, counsel failed to advise me that the state could present a hearing evidence and a hearing in aggravation completely goes away. And post-conviction counsel on appeal focuses just on the consecutive and maximum sentence advised, not the hearing in aggravation. Okay, well, I could be missing more than something. I could be missing a lot. But I'm going to assume for now that everything's exhausted and that it makes sense to get to the merits and say was the advice given about sentence, likely sentence or exposure, was that deficient and was there prejudice? So that's how I would like to analyze this. And I'll take another look at exhaustion later, but for now. So your arguments at least covers that. Let's get to the merits. Thank you, Judge Gould. And that's what I intended to focus on was exactly that. Very briefly, first and foremost, under McMahon v. Richardson, as informed by this court's decision in Duganere, counsel's advice has to be a gross mischaracterization of the likely outcome. District court didn't consider that at all, just said, you didn't advise of departure sentences, that's wrong and bad under Strickland, and so state you lose. That's not the analysis. The analysis is did the state court's decision, was it a reasonable, unreasonable application of McMahon as informed by Duganere? So Strickland, yes, indeed, is a correct standard, but in a plea context like this case, the district court had to look at McMahon v. Richardson as informed by Duganere. And, again, the state court need not even mention those cases. All that is required under U.S. Supreme Court precedent is that it not be an unreasonable application of McMahon. So what is the, you know, in the federal court system, I think you can withdraw a guilty plea for a fair and just reason. But in state court, what does someone have to show to be able to, in Oregon at that time, to withdraw a guilty plea? The state trial court addressed that standard, Your Honor, and found, in fact, that, well. This is just curiosity or perspective because that issue isn't precisely before us. Exactly, Your Honor. The state trial court found that Petitioner's plea was knowing and voluntary. To withdraw his plea, he would have had to have shown that, in fact, it was not. So he is different from the federal standard, Your Honor. So his argument, as I understood it, was my lawyer told me I'd have a much lighter time of it if I cooperated by pleading guilty. But, whoa, that didn't happen. They threw the book at me. Exactly. So my plea really was involuntary. That was exactly his argument. Yes, yes. And the state trial court rejected his testimony that counsel didn't advise him of departure sentences, that he didn't know about consecutives, and that he didn't know about the maximum sentence, and that factual findings entitled to deference under 2254 D2. That raises another question about whether the district court correctly accorded deference to the state court's decision. In Wood v. Allen, and I submitted a 28-J letter on Friday, I believe it was. Hopefully this court received it. Wood v. Allen is directly on point on that factual issue. So, in fact, the facts are exactly alike in this case and in Wood v. Allen. So what had happened in Wood v. Allen was trial attorney said one thing, then trial attorney said another thing. What do we do with that inconsistency in the factual record? And the Supreme Court said, contrary to what the district court had done, well, just because there's some inconsistencies in the record doesn't mean that a factual finding is not supported by the record. And that's exactly what our district court did. And one of the bigger errors, I think, is that post-conviction court found as fact that petitioner, well, let me back up. In the state trial court, petitioner said, counsel didn't advise me of departure sentences. Counsel said, you know, I don't really remember if I did or not because I was so worried about these consecutive ballot measure 11 sentences that he was probably going to get. In the state post-conviction proceeding, counsel said, well, you know, I think I did advise him of the potential for departures, but not the exact numbers. Petitioner didn't say a word. Didn't rebut that testimony. Didn't say, no, like I said, he didn't inform me about departure sentences. So post-conviction court said, petitioner, you're not credible, and I find counsel Friedman is credible. So district court said, hmm, no. He said one thing in the state trial court proceeding, one thing in post-conviction, I don't like that. I don't believe him. Petitioner, you get relief. Well, you can't do that. And Wood v. Allen makes that abundantly clear that you can't do that. There is evidence in the record that supports the post-conviction court's finding that counsel Friedman was, in fact, credible when he said, you know, I think I did advise him of the potentials for departures, but I didn't give him the exact number. Now, if, in fact, that is true, then that's not a gross mischaracterization of the likely outcome. But even if you, if this court disregards all that factual finding stuff, what's absolutely undisputed is that, and this comes from petitioner's testimony in the state trial court, he advised me that I could get 35.4 years. And that's without departures. He told me I could get 35.4 years. He ended up with 39.7 years. And I would encourage this court to compare that factual situation to the one in Dagener, where counsel said, I told him he could get 12 years, he got 15 years. There's really no difference in this factual circumstance as in Dagener, and this court found it wasn't a gross mischaracterization. Counsel, do you want to keep some time for rebuttal? I do, Your Honor. Thank you. Okay, Mr. Koffman. Thank you. May it please the court, counsel. The substantial question that was, that has been before the courts at every level of this case, was whether this Mr. Manley was put before an open sentencing, was set up for an open sentencing, whether he was told that the state, the prosecutor would seek the absolute maximum sentence against him. And the answer is absolutely not. How would his lawyer know for certain if the prosecutor would seek the maximum? Could ask the prosecutor would be one way to do it. But the record reflects that Mr. Manley did not know one way or the other. He told his wife he was exposed up to 50 years. Well, there's a distinction between the potential maximum sentence and knowing that, gee, this is the potential maximum sentence. There are statutory maximums. There is a prediction of what I could or could not get. And knowing what the nature of this sentencing hearing is going to be like, whether the state is going to come in there with both barrels, essentially. Yeah, but Friedman apparently tried to negotiate a fixed sentence here, and the state was unwilling to move on that. That's correct. And he advised his client that the state wasn't going to give him a fixed sentence. He didn't have any guarantees. His client knew that he was likely to get more than what I think was some 27 years, he tells his wife. And he admits that his counsel told him that he might get 36, and he might be exposed up to 50. So when he's 39, what's the problem? Your Honor, I don't believe that there's in the record any prediction about what he is or is not going to get. We do know that he's – is he advised about the potential maximum sentences? Yes. But the question is, and the question that's been presented in this case, and I believe is the substantial question, is was he advised that the state would seek that maximum sentence, that the state would seek a hearing in aggravation? And the answer to that is no, and it should be without dispute that the answer is no. Okay. Does he have to be – was he told that he might get consecutive sentences? He was told there was a potential for consecutive sentences. Okay. So the consecutive sentences is not a problem. The problem appears to be the hearing in aggravation. What did Mr. Friedman say about talking with him about a hearing in aggravation? My understanding is that there's nothing in the record about that, about telling him that there could be a hearing in aggravation. As a practical matter, what's the real-world consequence of having a hearing? Under Oregon law, at least at that time, there was a requirement that the state file a notice of hearing in aggravation, requesting a notice. Okay. Well, yeah, but I mean, what's the practical – if you have a hearing in aggravation, what's the – what does it mean in the real world? It means that the state will be pursuing departure sentences and or consecutive sentences to the extent under the law. Otherwise, the state is not able to do that. Okay. So I have a question for you. Don't tell me anything not in the record, but does the record tell us whether Mr. Friedman gave advice to this client, that if you plead guilty, the likely sentence is X. If you plead guilty, you know, the maximum sentence is such and such, but what I think is likely is such and such. Is there record evidence? I don't believe there's any – I'm sorry, Your Honor. I don't believe there's anything in the record that reflects any kind of prediction. By pleading guilty, he got rid of the counts relating to the earlier episode from – the counts relating to March, I guess it was, right? Isn't that right? That's correct. So – and that saved him from some exposure. I don't know how much. I would argue that that is – He's only got an awfully long sentence if he really thinks he's innocent. That's correct. But this case is not about a failure of prediction, about counsel saying you're going to get this amount and he actually got a lot more. Well, I'm not sure I understand that. I mean, if Friedman – there is evidence in the record that Friedman said he advised Manley he could be subject to departure sentences that he faced 429 months or 35.8 years even without departures, that they discussed consecutive sentencing and aggravating factors, and that he might – he faced a huge sentence but might get a break if he pled rather than went to trial. I'm sure you don't necessarily agree with that, but there is evidence of that kind of advice, isn't there? Your Honor, there is nothing in the record that would suggest that trial counsel predicted any kind of sentence for Mr. Manley. Well, but he still has no obligation to, does he? Are you trying to get us to say that counsel has got to predict with 100 percent accuracy, no less, because you would otherwise be saying it was lousy advice, exactly what the state intends to do and what it intends to show, and with 100 percent accuracy what the trial judge is going to do in response to all of that? Absolutely not. And what I'm saying is this is not a case about predictions. I think every defendant that goes before a court is told this is the maximum sentence. Your maximum sentence is life imprisonment. Your maximum sentence is 20 years imprisonment. But virtually every defendant doesn't believe that they're going to get that maximum sentence, and a very, very small percentage of them actually do get that maximum sentence. So to say here's what your maximum sentence is does not get us very far in terms of an intelligent and a voluntary case. So what was Friedman supposed to say? Mr. Friedman was supposed to say what he said later on, which is this is a very bad deal. It's a bad deal because it's an open sentencing, A. It's a bad deal, B, because you are someone that has maintained your innocence throughout this case, and I'm having you go in and plead guilty. At some point you're going to have to go before a sentencing judge. That's a very, very different argument, counsel, from the one I thought you were making. I thought you were making an argument that counsel had failed in his duty to disclose things to his client. You're just challenging the advice to plead guilty at all. That's a separate argument, Your Honor. But it dovetails because what this lawyer was doing was setting his client up for disaster. So your argument is that it is ineffective assistance of counsel to advise him to take a plea bargain without a fixed sentence, without an agreement as to the sentence. No. I mean, it's ineffective assistance of counsel to advise your client to take a plea bargain without advising your client of the nature of the sentencing hearing that he's going to be facing. In particular, as I said, he's maintained his innocence throughout, but you're advising him to plead guilty knowing that at some point he's going to have to go to a plea hearing. But you've already admitted that he was advised on consecutive sentences. He was actually told that by the trial court. He was advised that there was a potential for consecutive sentences. That's correct. What else can counsel say? There's a potential for consecutive sentences. You can't say you're going to get consecutive sentences. He doesn't control that. No, but you can say that you should expect that the prosecutor is going to present a hearing in aggravation and is going to ask for a consecutive sentence. So a hearing in aggravation is the one thing that Friedlander didn't say to him, is that you could get a hearing. They could go a hearing in aggravation. Trial counsel led Mr. Manley to believe that there was a potential for leniency at this hearing and did not say that the prosecutor would be filing a hearing in aggravation and would be requesting departure sentences. Did Mr. Friedlander know that to advise him of it? I don't know. The record doesn't reflect that. How could he advise him of things he didn't know? Well, as I said, he could have discovered that information, and if the prosecutor was not willing to give him that information, then explain to Mr. Manley that you must assume that that is the case in order to make this a voluntary and intelligent plea. Was it after the hearing in aggravation was scheduled that Mr. Manley sought to draw his plea? Yes, Your Honor. Your Honor, it's also clear from the record that this counsel deliberately failed to use a written plea petition in advising this client and in advising the court regarding the plea. I'm sorry. He refused to do what? I just didn't hear you. He refused to use a written plea petition. A written plea petition? Is that what you said? Yes. Okay. Then I now, having heard you, I don't know exactly what you're criticizing him for. In the typical case, when a defendant pleads guilty, there is a document that sets out the client's rights, and they take different forms. But oftentimes, they will relate the specific plea agreement, and they will relate specifically what the defendant did that he's claiming. Okay. So that kind of thing. The record reflects that this attorney deliberately chose not to do that, even though there was one available to him. He also admitted that Mr. Manley was under a great deal of pressure at the time that he entered this plea. He also, and I think the court, we don't really need to guess as to what Mr. Manley's mental state was at the time following the plea, because we do have in the record the affidavit from his mother, who visited with him after the plea hearing, and relates that he was very upset about it the day following the plea hearing and wanted to withdraw it immediately, and certainly did so after the hearing and aggravation. I did want to mention there was a question about the standard for withdrawing a plea in state court, and my understanding is that's a discretionary standard. There isn't any particular showing that has to be made. There certainly isn't a requirement that the defendant show that it was an involuntary, not intelligent plea. The district court didn't rule about whether the plea should have been permitted to be withdrawn, right? That's not an issue on this appeal. The district court did not rule that the state court should have allowed him to withdraw the plea. That's correct. But it is a discretionary as opposed to a specific standard that it was involuntary. And again, the McCann case cited by opposing counsel I believe is not on point for this case, because it's a case about predictions, about whether or not the attorney, I mean the complaint would be the attorney predicted that I would get a sentence and I got a much harsher sentence, and that is not this case. Unless the court has additional questions, I'll conclude. Okay, Judge Reimer, Judge Feinberg?  Thank you very much. Ms. Alexandra, can you lower that? Okay, good. Thank you, Your Honor. I didn't even know that our fancy equipment did that. That's very nice. I very much appreciate that. Just a couple of points very briefly, unless the court has further questions. If, in fact, McCann is not the controlling precedent, then we don't have any, because there is no Supreme Court precedent that says counsel must advise his client that the state will seek departure sentences or the court will impose departure sentences. It just isn't there. Is this an ADPA case or pre-ADPA? No, it's ADPA. It is under ADPA. Yes, Your Honor.  I thought the district court was making a ruling that Strickland wasn't satisfied, that there was deficient advice, and that Mr. Manley was prejudiced. Correct, Your Honor. But the way I read that opinion is, in fact, it was a de novo review without 2254 D1 and D2. And the court simply – well, let me back up. The court certainly could have found that the state court decisions and factual findings were not entitled to deference, but you had to do an analysis to get there. That doesn't mean that you go right to Strickland, do your own de novo review, and conclude that the requirements of Strickland were not met. The claim that the plea was not knowing and voluntary or that counsel didn't use a plea petition, those are claims that are not in the federal habeas petition. I'm not even sure if counsel made the plea petition argument in the answering brief. Just a couple of comments on prejudice. Donahue is incredibly informative on the prejudice issue. Here it's undisputed that all the parties knew that sentencing was at the discretion of the trial court. It was open sentencing. And Dagener says there is no prejudice when sentencing remains at the discretion of the trial court. And in addition, as explained in the reply brief at page 14, petitioner is just simply wrong on state sentencing law. He couldn't have gotten 220 months. In fact, that would have been ineffective advice if he told his client that that's what he could get. Thank you. Thank you. Nicely argued by a talented attorney. We appreciate it. So the case of Annalee v. DeLake shall be submitted.
judges: Rymer, Gould, Bybee